**Laszlo ADAM, Dennis W. Brush, Michael J. Connelly, Jack Weinstein, Marcel Fournier, William S. Kingson, Plaintiffs–Appellees,**

v.

**Eli S. JACOBS, Defendant–Appellant.**

**No. 212, Docket 91–7466.**

United States Court of Appeals, Second Circuit.

Argued Sept. 25, 1991.

Decided Nov. 22, 1991.

Gerson A. Zweifach, Washington, D.C. (Brendan V. Sullivan, Jr., Dennis M. Black, Williams & Connolly, Washington, D.C., J. Douglas Richards, O'Sullivan Graev & Karabell, New York City, of counsel), for defendant-appellant.

Allen S. Joslyn, New York City (Pamela G. Fisher, Cahill Gordon & Reindel, of counsel), for plaintiffs-appellees Adam, Brush, Connelly, Weinstein and Fournier.

Richard A. Rossman, Pepper, Hamilton & Scheetz, Detroit, Mich., Eleanor N. Ewing, Pepper, Hamilton & Scheetz, Philadelphia, Pa., Christopher Dee, Pepper, Hamilton & Scheetz, New York City, for plaintiff-appellee Kingson.

Before MESKILL, WINTER and ALTIMARI, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from a judgment entered in the United States District Court for the Southern District of New York, Keenan, J., ordering defendant Eli S. Jacobs, the guarantor of payment on certain notes, to pay $4,744,285.23 to plaintiffs.

On appeal, Jacobs argues that the district court erred by addressing the merits of the plaintiffs' guarantee of payment argument without first addressing whether this action should have been brought as a compulsory counterclaim in a suit filed previously in a federal court in Michigan. Jacobs argues that the claim in the present action is a compulsory counterclaim and should have been dismissed or transferred to the district court in the Eastern District of Michigan.

We vacate the judgment and remand to the district court with instructions to dismiss.

## BACKGROUND

Eli S. Jacobs, the defendant in this case, is a venture capitalist who runs the New York investment firm E.S. Jacobs & Company. His numerous holdings include a large stake in Flagship Express, Inc. (Flagship).

Rosenbalm Aviation services and maintains airplanes for air cargo carriers. It is incorporated in Nevada and maintains its principal place of business in Ypsilanti, Michigan. In November 1987, individual investment bankers known as the Adam Group, together with Fred K. Palone, a vice president of Rosenbalm Aviation, purchased the corporation. By December 1988, Palone and the Adam Group decided to sell the company.

In August 1989, the plaintiffs and Fred K. Palone entered into an Agreement and Plan of Reorganization to merge Rosen-

balm Aviation into RA Acquisition Corporation (RA), a wholly owned subsidiary of Flagship's predecessor corporation. By all accounts, Jacobs actively participated in every stage of the sale transaction.

The original agreement called for an all cash deal, but when this became unfeasible, the plaintiffs agreed to accept a combination of cash and bridge notes of Rosenbalm Aviation, Inc., the corporation that would result from the merger. To induce the plaintiffs to accept these notes, Jacobs executed unconditional personal guarantees. These guarantees were attached to the merger documents. The guarantees state, in pertinent part:

> The Guarantor understands and acknowledges that this Guaranty was a major inducement for Shareholder to accept the Note rather than to require full cash payment for his stock.
>
> Accordingly, the Guarantor hereby absolutely, unconditionally and irrevocably guarantees ... prompt and unconditional payment.
>
> . . . .
>
> No setoffs or counterclaims that the Guarantor or the Corporation may have against Holder will impair or otherwise affect Holder's rights against the Guarantor, and the Guarantor waives the assertion of any such setoffs or counterclaims in any proceeding to enforce the Guarantor's obligations under this Guaranty.

The guarantees do not mention the waiver of any rights (1) to assert defenses, or (2) to seek a declaratory judgment.

RA initially made the interest payments on these notes but on October 31, 1990, the day before full payment of the principal was due, Jacobs, Flagship, RAI, Inc. (a corporate conduit formed to effect the acquisition) and Rosenbalm Aviation Inc. (the post-acquisition entity) filed suit in the United States District Court for the Eastern District of Michigan (Michigan action). The ten count complaint pleaded six causes of action and sought rescission of the entire transaction on the ground that it was induced by fraud. Substantively, the plaintiffs in the Michigan action contend that fraudulent misrepresentations were made concerning (1) the status of Rosenbalm Aviation's contracts with its most important customer, (2) the size of Rosenbalm Aviation's inventory of rotable parts, and (3) the status of Rosenbalm Aviation's books. They assert that fraud permeated the transaction and induced acquisition of the company. Technically, rescission is sought based on section 12(2) of the Securities and Exchange Act of 1933, 15 U.S.C. § 77*l* (2), and section 29(b) of the 1934 Act, 15 U.S.C. § 78cc(b), common law fraud and the Declaratory Judgment Act, 28 U.S.C. § 2201. The Michigan action remains pending. Palone and the Adam Group challenged the complaint, asserting that Jacobs and the other plaintiffs in that action lacked standing to assert the federal securities claims.

When the sums due on November 1 were not received, the Adam Group demanded payment of the notes and gave formal notice to Jacobs of the default. Subsequently, the Adam Group filed a motion for summary judgment in lieu of complaint in New York Supreme Court on January 2, 1991. On February 1, 1991, Jacobs removed the action to the United States District Court for the Southern District of New York on grounds of diversity jurisdiction.

In the Southern District, on February 8, Jacobs moved the district court to dismiss the Adam Group's complaint. Then, on February 11, the Adam Group moved for summary judgment. On February 19, Jacobs cross-moved for leave to take certain discovery to respond to the summary judgment motion. The parties then briefed the court on all three motions. Plaintiffs argued that, based on New York law, Jacobs' guarantees were absolute and that Jacobs was not entitled to raise any defenses. In response, Jacobs asserted that (1) the New York court should have stayed its action pending resolution of the Michigan action, (2) summary judgment was improper because federal law provided him with a defense, and (3) he was entitled to discovery under Fed.R.Civ.P. 56(f).

Granting the Adam Group's motion for summary judgment, the district court dis-

cussed—to the exclusion of all other issues—the availability of defenses under New York law to those who have executed guarantees. Apparently the district court felt that plaintiffs' possession of a clear right eliminated the need for it first to determine whether the Southern District of New York was a proper forum. The district judge in fact commented that "[b]ecause the Court's decision concerning plaintiffs' motion for summary judgment is dispositive, the Court need not address the other motions before it." Jacobs argues that the merits of the summary judgment motion never should have been reached and argues that we should dismiss the present action. We agree.

## DISCUSSION

■ " '[W]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience ... or ... special circumstances ... giving priority to the second.' " *First City Nat'l Bank and Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir.1989) (citations omitted). Deference to the first filing "embodies considerations of judicial administration and conservation of resources." *Id.* at 80 (citations omitted). The decision whether or not to stay or dismiss a proceeding rests within a district judge's discretion. *See Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183–84, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952). As Judge Friendly noted in *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1204 (2d Cir.1970), however, a district court can go "beyond the allowable bounds of discretion" when it refuses to stay or dismiss a duplicative suit. We consider the propriety of the forum a threshold issue that must be considered before addressing the merits. Because the record is clear we consider the issue *de novo*.

I. *Compulsory Counterclaims and Stays*

■ Jacobs argues that this action involves a compulsory counterclaim that the Michigan action should resolve. Succinctly stated, he contends that actions for enforcement and rescission of the same transaction are logically interdependent. Under Fed.R.Civ.P. 13(a), a pleading must state as a counterclaim any claim that arises out of the "transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." The test for determining whether a counterclaim is compulsory is whether a logical relationship exists between the claim and the counterclaim and whether the essential facts of the claims are " 'so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.' " *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir.1980) (citations omitted).

■ The plaintiffs, for their part, assert that the guarantees and the merger constitute separate transactions, which different courts properly may untangle. We disagree. The guarantees and the merger agreement were executed together and, by plaintiffs' own argument, the parties would not have signed one without the other. If actionable fraud occurred, it clearly induced and was related to the guarantees. Moreover, under Second Circuit case law, claims for rescission and enforcement arise out of the same transaction or occurrence. *See, e.g., National Equipment Rental, Ltd. v. Fowler*, 287 F.2d 43, 45–46 (2d Cir.1961). We thus conclude that the action before us necessarily constitutes a compulsory counterclaim in the Michigan action.

As appellate authority for its position that the guarantees constitute wholly separate agreements, the Adam Group directs us to a group of cases from other circuits. Among these are *Maddox v. Kentucky Fin. Co.*, 736 F.2d 380 (6th Cir.1984), *Valencia v. Anderson Bros. Ford*, 617 F.2d 1278, 1292 (7th Cir.1980), *rev'd on other grounds*, 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981), and *Whigham v. Beneficial Fin. Co. of Fayetteville*, 599 F.2d 1322 (4th Cir.1979). These are Truth–in–Lending Act (TILA) cases, and we do not find them persuasive. The issues of fact

and law relating to debt claims differ significantly from the borrowers' claims in these cases and the evidence needed to support each position may vary. *See Whigham*, 599 F.2d at 1323–24. The borrower need show only that the loan documents do not comply with specific federal regulations. By contrast, the bank must show a breach of contract. Thus, as the *Whigham* Court stated, "a lender's claim for debt against a borrower who sues for violation of [TILA] has none of the characteristics associated with a compulsory counterclaim." *Id.* at 1323 (footnote omitted). Obviously, we disagree with the contention that the claims involved here are similarly distinct from each other.

Having concluded that the case before us involves a compulsory counterclaim in the Michigan action, we now address whether a district court should hear a claim that constitutes a compulsory counterclaim in an earlier filed action.

### A. Avoiding Duplicative Litigation

The Adam Group technically has not violated Rule 13(a) by bringing its lawsuit in New York. Nothing in Rule 13 prevents the filing of a duplicative action instead of a compulsory counterclaim. 6 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1418, at 142–43 (2d ed. 1990 & Supp.1991). The filing of the second action, however, contravenes the purpose of Rule 13: "Ideally, once a court becomes aware that an action on its docket involves a claim that should be a compulsory counterclaim in another pending federal suit, it will stay its own proceeding." *Id.* at 143.

█ As the Supreme Court has stated, Rule 13(a) "was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." *Southern Const. Co. v. Pickard*, 371 U.S. 57, 60, 83 S.Ct. 108, 110, 9 L.Ed.2d 31 (1962). The rule "was particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint." *Id.* We believe that the rule plays a unique role in conserving judicial resources and that a court's failure to stay its hand unduly burdens the litigation process. *Cf.* W. Reece, M. Rosenberg & P. Hay, *Conflict of Laws* 199 (9th ed. 1990) ("In English practice, multiplicity of proceedings which may result from the pendency of litigation elsewhere ... now is also an important element to be taken into account in ruling on forum non conveniens motions.").

In *National Equipment Rental*, plaintiff commenced an action in the Eastern District of New York against the defendant, Thomas, for payments due under a lease. Thomas defended in that action by seeking rescission and by counterclaiming for his own damages. Four months later, Thomas brought his own action, based on the same lease agreement, in the Northern District of Alabama. After the Alabama court refused to stay the action, the Eastern District judge enjoined the parties from proceeding further in Alabama. Thomas appealed, alleging that the district judge had abused his discretion by enjoining the Alabama suit. 287 F.2d at 45.

We affirmed the district court, stressing that "the situation was a perfect one for the issuance of the injunction.... 'We believe it to be important that there be a single determination of a controversy between the same litigants and, therefore, a party who first brings an issue into a court of competent jurisdiction should be free from the vexation of concurrent litigation over the same subject matter.'" 287 F.2d at 46 (citations omitted).

While the normal chronology would have been for the court of first impression—here, the Michigan court—to have enjoined the second court, this procedure is not mandatory. The same policies are furthered by the second court's exercising judicial self-restraint:

[W]e can see no reason why the end result should be different when the party seeking to preserve the primacy of the first court moves the second court to stay its hand rather than asking the first court to enjoin prosecution of the second case. Whatever the procedure, the first suit should have priority, "absent the

showing of balance of convenience in favor of the second action."

*Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d at 1202–03 (citations omitted) (abuse of discretion for district judge not to stay suit where plaintiff had filed repetitive actions in New Jersey and New York, *even though "New York [was] a more logical forum"*) (emphasis added). For us to refuse to stay our own proceedings while exercising a willingness to enjoin parties from litigating in other courts would be inconsistent. Here, even if plaintiffs are correct that Jacobs must fulfill his guarantee obligations regardless of whether the Michigan court grants rescission, the Southern District of New York is not at this time the better place to make that determination.

### B. Judicial Economy

Plaintiffs also argue that judicial economy requires affirmance of the lower court. Although they do not say so expressly, they appear to argue that economy fits their case within the "balance of convenience" or "special circumstances" exceptions to the prior pending action rule. We disagree.

Plaintiffs' rationale is that the issues in the Michigan action are complex and that the claim that they have sued on in New York is simple. In effect, they argue that because the court easily can separate the actions, the issues are not really intertwined. As support, they cite *Lucerne Products, Inc. v. Skil Corp.,* 441 F.2d 1127 (6th Cir.1971). *Lucerne* does not persuade us. While the *Lucerne* Court did say that Rule 13 was not intended to bar expedient adjudication, the claims in that case were not logically related. In *Lucerne,* the plaintiff filed a simple action for goods sold and delivered in the Sixth Circuit while it was involved in "patent litigation of major proportions" in the Seventh Circuit. The Sixth Circuit allowed the suit to go forward because the defendant had not demonstrated that the claim for goods sold and delivered arose out of the patent licensing agreement that was the subject of the Seventh Circuit litigation. Here, conversely, the second suit clearly relates to the same transaction as the first.

Moreover, plaintiffs argue that the case properly was heard in this Circuit because the guarantees state that New York law would apply. The Michigan court is quite capable of honoring that choice of law agreement.

### CONCLUSION

We conclude that Rule 13 governed the matter before the district court, which first should have considered whether it was the proper forum before reaching the merits. In light of the facts and our conclusion that this case does not justify a departure from the prior pending action rule, we conclude that the district court erred by failing to transfer or dismiss this action. Jacobs has stated on the record that he procedurally will not oppose the filing of counterclaims in the Michigan action. With that understanding, we vacate the judgment and remand this matter to the district court with instructions to dismiss the action.