**SOTHEBY'S, INC., Plaintiff,**

v.

**Sandra H. GARCIA and the Republic of the Philippines, Defendants.**

**No. 92 Civ. 4842 (WCC).**

United States District Court,
S.D. New York.

Sept. 30, 1992.

Berger Steingut Tarnoff & Stern, New York City (Peter R. Stern, Jonathan A. Olsoff, of counsel), for plaintiff.

Badiak, Will & Maloof, New York City (Roman Badiak, Richard Matthews, Glen Thompson, Patrick J. Maloney, of counsel), Pender & Coward, Virginia Beach, Va. (Richard H. Matthews, of counsel), for defendant Sandra H. Garcia.

Sills Cummis Zuckerman Radin Tischman Epstein & Gross, P.A., New York City (Jeffrey J. Greenbaum, Brian K. Valentine, of counsel), for defendant Republic of the Philippines.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

Plaintiff Sotheby's, Inc. ("Sotheby's") commenced this interpleader action against the Republic of the Philippines (the "Philippines") and Sandra H. Garcia ("Garcia") on June 27, 1992 as a neutral stakeholder. Presently before the Court is defendant Garcia's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed.R.Civ.P. or, in the alternative, to stay the present interpleader action pending resolution of an action instituted in the United States District Court for the Eastern District of Virginia (the "Virginia Action"). Also before the Court are the motions of Sotheby's and the Philippines for an injunction pursuant to 28 U.S.C. § 2361 against Garcia's continued prosecution of the Virginia Action or any other actions which would interfere with the disposition of the paintings that are the subject of this action.

## BACKGROUND

In July of 1991, Garcia claims to have lent Imelda Marcos, wife of former President of the Philippines, Ferdinand E. Marcos, the sum of $1 million at an interest rate of ten percent per annum. The collateral for the loan consisted of artwork given by Mrs. Marcos to Garcia to secure the repayment. *See* Garcia Aff. at ¶¶ 4–5; Garcia Exh. B. According to the Complaint, on March 31 and April 6, 1992, Garcia personally delivered to Sotheby's premises in New York the following six oil paintings (collectively "the Paintings"):

1. *Interior With Musicians and Backgammon Players* by Dirk Hals;

2. *Adoration of the Magi* by Pieter Brueghel, the Younger;

3. *Elegant Company on a Loggia* by Jan Steen;

4. *Portrait of a Lady with a Straw Hat* by William Hogarth;

5. *Male Portrait* a Circle of Antonio Moro; and

6. *Three Children* by Robert Street.

Cmplt. at ¶ 6; Aff. of George Wachter, Vice–President of Sotheby's Old Master Paintings Department at ¶ 2.

On April 7, 1992, counsel for the Philippines advised Sotheby's by telephone and by confirming letter that the Philippines claimed to be the owner of at least two of the six Paintings. Aff. of Marjorie E. Stone, Esq., Sotheby's General Counsel at ¶¶ 1–3; Sotheby's Exh. C. At that time, counsel for the Philippines advised Sotheby's that it was possible that other items which that client had delivered to it were also the property of the Philippines. *Id.* at ¶ 3. On April 14, 1992, Garcia allegedly appeared in New York at Sotheby's offices, demanding the return of all six Paintings. Wachter Aff. at ¶ 2. On April 24, 1992, Sotheby's received in New York a second letter from the attorneys for the Philippines which stated in pertinent part:

Please be advised that the Republic of the Philippines claims to be the owner of each of [the six Paintings] and all property tendered for consignment by Ms. Garcia. We believe this property was pur-

chased by or on behalf of Ferdinand Marcos and Imelda Marcos with funds they illegally obtained through bribery, extortion, embezzlement of public property and funds, and other breaches of the public trust while Mr. Marcos was President of the Philippines.

We will be seeking the recovery of all of the property tendered to you by Ms. Garcia, including all of the paintings described above, and request in the interim that you not release any of the property to the consignor or we will hold Sotheby's accountable for such actions.

Sotheby's Exh. D. The Paintings remain in Sotheby's possession at its New York headquarters.

Garcia commenced the Virginia Action against Sotheby's on April 20, 1992. In that action, Garcia claims that Sotheby's, by refusing to return the Paintings, has converted them. In July, 1992, Sotheby's moved to stay the Virginia Action pending disposition of the instant action, or alternatively, to transfer the Virginia Action to the Southern District of New York. Sotheby's objected to the continuation of the Virginia Action on the grounds that the Philippines could not be made a party to that Action, thus subjecting Sotheby's to the risk of conflicting judgments. Garcia opposed the motion to stay or transfer, arguing that Sotheby's should have joined the Philippines in the Virginia Action. In an Opinion and Order dated September 1, 1992, the Virginia Court denied Sotheby's motion to stay or transfer.

■ Garcia urges dismissal for lack of subject matter jurisdiction over this interpleader action involving the Philippines, a foreign state within the meaning of the Foreign Sovereign Immunities Act of 1976

(the "FSIA").[1] In the alternative, Garcia contends that the equities weigh in favor of permitting the Virginia Action to proceed. Sotheby's and the Philippines ask this Court to enjoin the Virginia Action, arguing that if allowed to proceed, it would threaten the Philippines' ability to recover the Paintings and would threaten Sotheby's with multiple litigation and, possibly, multiple liability.[2]

## DISCUSSION

*Motion to Dismiss for Lack of Subject Matter Jurisdiction*

■ The FSIA is "the exclusive source of subject matter jurisdiction over all suits involving foreign states or their instrumentalities." *Letelier v. Republic of Chile*, 748 F.2d 790, 793 (2d Cir.1984), *cert. denied*, 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985). It is undisputed that the Philippines is a foreign state as that term is defined in the FSIA. Thus, if this Court is to exercise jurisdiction over the Philippines, it can do so only in accordance with the provisions of the FSIA.

■ According to Section 1604 of the FSIA, "foreign states" are immune from suit in the courts of the United States unless the conduct complained of comes within the exceptions enumerated in 28 U.S.C. §§ 1605 to 1607. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 435 n. 3, 109 S.Ct. 683, 688 n. 3, 102 L.Ed.2d 818 (1989); *Martin v. Republic of South Africa*, 836 F.2d 91, 93 (2d Cir.1987); *Letelier*, 748 F.2d at 793. The exceptions to sovereign immunity include cases "in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdraw-

---

1. 28 U.S.C. §§ 1602–1611.

2. As Garcia correctly points out, Local Rule 3(b) of the Southern and Eastern Districts of New York requires the moving party to serve and file with its motion papers a "memorandum setting forth the points and authorities relied upon in support of the motion." Despite this clear wording, Sotheby's moved for injunctive relief upon a Notice of Motion and an Attorney Affirmation. Failure to supply the required memorandum of law "may be deemed sufficient cause

for the denial of the motion." *See* Local Rule 3(b).

However, because Sotheby's did sufficiently set forth the factual and legal basis for the requested injunction in its September 10, 1992 Memorandum of Law in Opposition to the Motion of Defendant Garcia to Dismiss or Stay the Action, the Court finds that such a severe sanction for failure to comply with the Local Rule is unwarranted. *See* Memo. at 8 n. 3. Accordingly, the Court proceeds to the merits.

al of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver." 28 U.S.C. § 1605(a)(1). In the present case, the Philippines has agreed to waive any jurisdictional objections to its appearing. Indeed, the Philippines notes in its Memorandum that it "has accepted service of process, has no objection to the Court's assertion of jurisdiction over it, and will be filing its answer to Sotheby's Complaint in Interpleader." Memo. at 17; Affirmation of Jeffrey J. Greenbaum, counsel for the Philippines, at ¶ 8. Accordingly, the defense of sovereign immunity has been waived and is no bar to continuation of this action.[3]

■ Garcia contends, however, that this interpleader action cannot be maintained pursuant to 28 U.S.C. § 1335 because there is no diversity between the claimants as set forth in 28 U.S.C. § 1332. Section 1335 provides that the district courts have jurisdiction over civil actions involving adverse claims to money or property worth $500 or more so long as at least two of the adverse claimants are of diverse citizenship and are claiming or may claim to be entitled to such money or property.

Garcia is correct that the literal language of Section 1335 makes reference to "[t]wo or more adverse claimants, of diverse citizenship as defined in section 1332 of this title...." Prior to 1976, 28 U.S.C. § 1332 expressly provided for jurisdiction between citizens of a state and foreign states, 28 U.S.C. § 1332(a)(2), and for disputes between citizens of different states in which foreign states are additional parties, 28 U.S.C. § 1332(a)(3). In 1976, Congress passed the FSIA together with 28 U.S.C. § 1330, which provides that district courts shall have original jurisdiction, without regard to the amount in controversy, of ac-

tions against foreign states, to the extent that the foreign state is not entitled to immunity under the provisions of 28 U.S.C. §§ 1605–1607 or under any applicable international agreement. The FSIA amended the diversity statute, deleting references to suits in which a foreign state is a party either as plaintiff or defendant, *see* 28 U.S.C. § 1332(a)(2) and (a)(3), and added a new paragraph (a)(4) that preserves diversity jurisdiction over suits in which foreign states are plaintiff. The legislative report accompanying the 1976 amendments explains that "[s]ince jurisdiction in actions against foreign states is comprehensively treated by the new section 1330, a similar jurisdictional basis under section 1332 becomes superfluous." H.R.Rep. No. 94–1487, 94th Cong., 2d Sess. (1976), *reprinted in* U.S.Code Cong. & Admin.News 6604, 6613; *see also Argentine Republic*, 488 U.S. at 438 n. 5, 109 S.Ct. at 689 n. 5.

■ There is no doubt that prior to the enactment of the FSIA, the Philippines and Garcia would have been considered diverse under 28 U.S.C. § 1332(a)(2), and statutory interpleader would have been proper. The statement in the legislative report that reference to "foreign states" in 1332(a)(2) and (a)(3) was eliminated as "superfluous" suggests that the drafters of the FSIA simply did not consider the relationship between § 1332 and § 1335. While technically Section 1335 should have been amended to refer to Sections 1332 and 1330, this parallel change was neglected. Such an oversight, however, does not indicate an intent on the part of Congress belatedly to restrict the broad reach of the interpleader statute to only those situations where a foreign state is plaintiff, particularly when a foreign state could be properly joined under Section 1330. Consistent with the

---

3. Contrary to the assertions of Garcia, Sotheby's failure to allege the existence of any of the specified exceptions to sovereign immunity as set forth in the FSIA is not fatal to the Court's exercise of subject matter jurisdiction over this action involving the Philippines. Paragraph 4 of Sotheby's Complaint in Interpleader alleges that the Court has jurisdiction over this action "pursuant to 28 U.S.C. Sections 1335, *1330,* 1332 and 1367(a)" (emphasis added). Under § 1330(a), there is subject matter jurisdiction

over "any claim for relief in personam with respect to which the foreign state is not entitled to immunity [ ] under sections 1605–07 of this title...." Sovereign immunity is an affirmative defense which must be specially pleaded for a court to consider it, *Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico*, 727 F.2d 274, 277 (2d Cir.1984), and if not raised, is no bar to jurisdiction. Accordingly, Sotheby's has properly alleged jurisdiction over the Philippines pursuant to the FSIA.

Supreme Court's observation that the interpleader statute is "remedial and to be liberally construed," *State Farm Fire & Casualty Co. v. Tashire,* 386 U.S. 523, 533, 87 S.Ct. 1199, 1205, 18 L.Ed.2d 270 (1967), this Court concludes that maintenance of this suit in interpleader against the Philippines, a foreign state, and Garcia, a citizen of a state, is proper pursuant to 28 U.S.C. § 1335.[4]

*Motion to Stay This Action Pending Resolution of the Virginia Action*

Garcia argues that the present interpleader action, commenced by Sotheby's and naming Garcia and the Philippines as defendant/claimants, should be stayed pending resolution of the Virginia Action. Garcia submits that as her action was the first filed, it should be permitted to proceed. In addition, she contends that the interpleader action commenced by Sotheby's is transparent forum shopping and that Sotheby's could have asserted, and can still assert, its interpleader claim as a counterclaim in the Virginia Action. Sotheby's and the Philippines argue, to the contrary,

that the continuation of the present action is proper and that the Court should enjoin the continued prosecution of the Virginia Action, as well as any other actions that may be commenced concerning the Paintings, arguing that only in New York are jurisdiction and venue under the FSIA proper.[5]

■■■■ "Requisite to the maintenance of an interpleader action is that the stakeholder be subject to multiple adverse claims against a single fund or liability." *Gaines v. Sunray Oil Co.,* 539 F.2d 1136, 1141 (8th Cir.1976); *Trowbridge v. Prudential Ins. Co. of America,* 322 F.Supp. 190, 192 (S.D.N.Y.1971). The purpose of such an action is to protect the stakeholder from the vexation of multiple lawsuits and from the possibility of multiple liability that could result from inconsistent determinations in different courts. *See, e.g., Ashton v. Josephine Bay Paul & C. Michael Paul Found., Inc.,* 918 F.2d 1065, 1068 (2d Cir. 1990) (avoidance of being "subjected to inconsistent judgments in different fora"); *John v. Sotheby's, Inc.,* 141 F.R.D. 29, 33

---

4. Sotheby's action can also be properly maintained under Rule 22, Fed.R.Civ.P. Rule interpleader is available in all instances in which a traditional basis for subject matter jurisdiction exists. *John v. Sotheby's, Inc.,* 141 F.R.D. 29, 37 (S.D.N.Y.1992). Sotheby's is a New York corporation with its principal place of business in New York, and Garcia is a citizen of Virginia. Accordingly, this Court has subject matter jurisdiction because complete diversity exists and the amount in controversy exceeds $50,000. With respect to the Philippines, there is subject matter jurisdiction pursuant to 28 U.S.C. § 1330. *See generally* 3A *Moore's Federal Practice* ¶ 22.09[5], at 22–88—22–90 (2d ed. 1992).

5. It is not clear to the Court that venue in the instant interpleader action would only be proper in the Southern District of New York. Indeed, Judge MacKenzie concluded that the Eastern District of Virginia was also a permissible forum for Sotheby's interpleader action. *See Garcia v. Sotheby's, Inc.,* 2:92 Civ. 307, slip. op. at 4 n. 1 (E.D.Va. Sept. 1, 1992). The venue provision of the FSIA, 28 U.S.C. § 1391(f), provides in pertinent part:

> A civil action against a foreign state as defined in section 1603(a) of the title may be brought—
> (1) in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial

part of property that is the subject of the action is situated. . . .

Certainly, New York is a proper forum for maintenance of the interpleader action since the Paintings are presently located in New York; the Paintings were delivered to Sotheby's in New York; the Philippines contacted Sotheby's concerning the Paintings via its counsel in New York; and Mrs. Garcia visited Sotheby's in New York demanding the return of the Paintings. Virginia, however, may also be a permissible forum since Mrs. Garcia negotiated in Virginia with Mrs. Marcos the terms and conditions of a loan, with a number of the paintings to be held as collateral; Mrs. Garcia received several of the paintings which are the subject of this suit at her home in Virginia; the funds advanced to Mrs. Marcos were transferred from an account in Virginia; the promissory note from Imelda Marcos to Sandra Garcia evidencing the debt was witnessed by residents of Virginia; and a resident of Virginia witnessed the receipt of some of the paintings and the representation that Mrs. Marcos was the absolute owner of those paintings free and clear of any encumbrances. Aff. of Sandra Garcia, Exh. A, at ¶¶ 4–9. In any event, whether or not venue would be proper in Virginia, under the FSIA, there would be no subject matter jurisdiction in Virginia over this interpleader action involving the Philippines.

(S.D.N.Y.1992) ("insulate a stakeholder from contradictory judgments and multiple liability"); Wright, Miller & Kane, 7 *Federal Practice & Procedure: Civil 2d* § 1702, at 495–96 (2d ed.1986) (interpleader is employed to reach an "effective determination of disputed questions with a consequent saving of trouble and expense for the parties."). Garcia submits that Sotheby's has no entitlement to interpleader relief because the Philippines has asserted no cognizable claim of title to the Paintings. Indeed, Garcia argues, the "claims" asserted by the Philippines are not "claims" against the artwork, but rather, "claims" against Imelda Marcos.

 The availability of the interpleader remedy, however, is not dependent on the merits of the claims asserted against the stakeholder. *John v. Sotheby's, Inc.*, 141 F.R.D. at 33; *A/S Krediit Pank v. Chase Manhattan Bank*, 155 F.Supp. 30, 33–34 (S.D.N.Y.1957). "The mere threat of future litigation is a sufficient basis for interpleader." *A/S Krediit Pank*, 155 F.Supp. at 34. Moreover, a party is not required to evaluate the merits of conflicting claims at its peril; rather, it need only have a good faith concern about duplicitous litigation and multiple liability if it responds to the requests of certain claimants and not to others. *Bache Halsey Stuart Shields Inc. v. Garmaise*, 519 F.Supp. 682, 684–85 (S.D.N.Y.1981); 3A *Moore's Federal Practice* ¶ 22.02[1], at 22–7 (2d ed.1992). In the instant action, the April 24, 1992 letter from counsel for the Philippines to Sotheby's, in which the Philippines claimed "to be the owner of each of [the Six Paintings] and all property tendered for consignment by Ms. Garcia," was a sufficient claim to the Paintings to justify Sotheby's filing of the instant interpleader action.[6]

 It is true, as Garcia asserts, that the long-standing rule in this Circuit is that where there are two competing lawsuits, the first suit should have priority, " 'absent the showing of balance of convenience ... or ... special circumstances ... giving priority to the second.' " *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir.1991) (quoting *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir.1989)) (citations omitted). The "first filed rule," however, is not to be mechanically applied, *Cooperative Centrale Raiffeisen–Boerenleen Bank B.A. v. Northwestern Nat'l Ins. Co. of Milwaukee*, 778 F.Supp. 1274, 1278 (S.D.N.Y.1991), and ultimately, "[t]he decision whether or not to stay or dismiss a proceeding rests within a district judge's discretion." *Adam v. Jacobs*, 950 F.2d at 92 (citing *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183–84, 72 S.Ct. 219, 221–22, 96 L.Ed. 200 (1952)).

This is a case where special circumstances warrant giving priority to the later filed suit. The Virginia Action does not include the Philippines as a party, nor is the Philippines amenable to suit in Virginia. Moreover, the Court in Virginia does not intend to address the issue of title to the Paintings and could not make any determination which would resolve the claim of the Philippines. In his decision dated September 1, 1992, Judge MacKenzie specifically noted that, in the case before him, "[t]he issue is not one of title or ownership, but of possession, and questions whether Sotheby's wrongfully detained property that Mrs. Garcia had placed in its possession." *Garcia v. Sotheby's, Inc.*, 2:92 Civ. 307, slip. op. at 1 (E.D.Va. Sept. 1, 1992). If Garcia were to succeed in the Virginia Action and procure return of the Paintings, the Philippines may be left without a means to satisfy an ultimate judgment in its favor. Nor can the Virginia Action insulate Sotheby's from an action that may later be commenced by the Philippines charging it with improperly returning the

---

6. Garcia's argument that Sotheby's colluded with the Philippines in commencing this interpleader action and comes to the Court with "unclean hands" is similarly meritless. Sotheby's did not, as Garcia contends, contribute to the development of the adverse claims. Even if Sotheby's did contact the Philippines' counsel and advise him that two of the six Paintings consigned to it had been reported to the International Foundation for Art Research as stolen from the Philippines in 1986, such conduct would appear to be wholly appropriate for a reputable art dealer.

paintings to Garcia when it was on notice of the Philippines' claim to ownership of the Paintings. It is only in this interpleader action that the competing claims to ownership of the Paintings can be resolved and effective relief granted.

While Garcia insists that *Commerce & Indus. Ins. Co. v. Cablewave Ltd.,* 412 F.Supp. 204, 207 (S.D.N.Y.1976), requires a different result, this Court is unpersuaded by her argument. It is true, as the *Cablewave* court found, that "interpleader relief may be denied if there is an adequate remedy elsewhere," and that "federal courts should 'not be called upon to duplicate each other's work in cases involving the same issues and the same parties.'" *Id.* (quoting *Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1203 (2d Cir.1970)). However, the present case is not one in which the Court can conclude that there is an adequate remedy elsewhere, since, as noted above, the Philippines is not a party to the Virginia action, and the issues in the Virginia Action are separate and distinct from those raised herein.

Nor does the "substantial time" of the court and the litigants that has been invested in the Virginia Action compare to that of the Court and the litigants in *Cablewave,* where the Alabama District Court had denied motions to dismiss for failure to state a claim, motions for summary judgment were pending, documentary discovery was underway, and trial was expected in approximately one month. 412 F.Supp. at 207 n. 6. The Virginia Action was commenced only two months before Sotheby's interpleader action, as of September 16, 1992, no depositions had yet taken place, and the trial set for December 1, 1992 in Virginia is only one week earlier than the

December 7, 1992 trial scheduled in this interpleader action. Even if the Philippines could be joined in the Virginia Action, its joinder would introduce a new claim with new issues, new discovery, and new motions. In contrast, this interpleader action already involves all the parties and is set to move expeditiously forward.[7]

All of the above-enumerated considerations lead the Court to conclude that proceeding with the interpleader action filed in the Southern District of New York is the most equitable, as well as the most efficient, course to follow.

*Motion for an Injunction against Further Prosecution of the Virginia Action*

■ An injunction against overlapping lawsuits is desirable to insure the effectiveness of the interpleader remedy. It prevents the multiplicity of actions and reduces the possibility of inconsistent determinations. *See* Wright, Miller & Kane, 7 *Federal Practice & Procedure: Civil 2d* § 1717, at 612 (2d ed. 1986). Section 2361 provides in pertinent part:

> In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court.

Section 2361 enables a party meeting the requirements of Section 1335 to obtain a restraining order without following the procedures set forth in Rule 65, Fed.R.Civ. P., which normally governs the issuance of injunctive relief.[8] *See* Fed.R.Civ.P. 65(e)

---

7. Other factors, too, weigh in favor of finding that New York is the proper forum in which to proceed with the action: the Paintings are physically present in New York; Mrs. Garcia allegedly came here on two occasions to deliver the Paintings to Sotheby's and on a third occasion to demand their return; the Philippines is present in New York where it has certain government offices located at 556 Fifth Avenue, including the New York offices of its Presidential Commission on Good Government, the authorized agency empowered to seek the recovery of "ill gotten wealth" of former President Marcos

and his wife; and the present action contains issues substantially similar to those in another action pending before this Court, *Cohen v. The Republic of the Philippines,* 92 Civ. 4308 (WCC), in which the Philippines is also seeking to recover artwork transferred to third parties by or on behalf of Ferdinand and Imelda Marcos.

8. In rule interpleader actions, injunctive relief is also available, albeit not pursuant to 28 U.S.C. § 2361, in order to effectuate a district court's exercise of its jurisdiction. Wright, Miller &

("These rules do not modify ... the provisions of Title 28, U.S.C., § 2361").

An injunction against proceeding with the Virginia Action is necessary to protect the res before the Court and insure that the Philippines will have a proper forum to litigate its claim to the Paintings. Accordingly, all parties herein and any person acting in their behalf are hereby enjoined from continuing or bringing any action, in any court, concerning the Paintings that are the subject of this action.

### CONCLUSION

For the foregoing reasons, Garcia's motion to dismiss for lack of subject matter jurisdiction, or in the alternative, to stay this action pending resolution of the action commenced in the Eastern District of Virginia is denied. The motions of Sotheby's and the Philippines to enjoin the further prosecution of the Virginia Action and the institution of any new actions concerning the Paintings that are the subject matter of this suit are granted.

SO ORDERED.

Kane, 7 *Federal Practice and Procedure: Civil 2d*