Marc COHEN and Marc Cohen
Company, Plaintiffs,

v.

The REPUBLIC OF THE PHILIPPINES
and Klaus Braemer, Defendants.

No. 92 Civ. 4308 (WCC).

United States District Court,
S.D. New York.

Feb. 10, 1993.

Michael G. Berger, New York City, for plaintiffs.

Sills Cummis Zuckerman, Radin, Tischman Epstein & Gross, P.A., New York City, for defendant The Republic of the Philippines; Jeffrey J. Greenbaum, Brian K. Valentine, of counsel.

Rochman Platzer Fallick Rosmarin & Sternheim, New York City for defendant Klaus Braemer; Bobbi C. Sternheim, of counsel.

Neal J. Hurwitz, New York City, for defendant Intervenor Imelda R. Marcos.

James P. Linn, John D. Singleton, of the Law Firm of: Linn & Helms, Oklahoma City, OK.

OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

This is an interpleader action initiated by Marc Cohen and Marc Cohen & Co. (collectively "Cohen") against Klaus Braemer (Braemer) and The Republic of the Philippines (the Philippines). The action is presently before the Court on the motion of Imelda R. Marcos (Marcos) for leave to intervene. The motion is granted subject to the conditions outlined below.

BACKGROUND

At issue in this action is the ownership of four paintings whose total value is nearly $5,000,000.[1] Compl. ¶ 6. In late 1991 or

---

1. The paintings at issue are Georges Braque's "Guitar Valse", Henri Matisse's "Head of a

early 1992, Cohen received the paintings on consignment from Braemer, who was Marcos's agent entrusted to run her New York home in which the paintings had previously hung. Compl. ¶ 8; Braemer Answer ¶ 20; Singleton Aff. ¶ 4. Braemer demanded return of the paintings in March of 1992, but Cohen refused because he was uncertain who actually owned the paintings. Braemer Answer ¶ 28. Consequently, Cohen brought this interpleader action against Braemer and the Philippines.

Braemer claims that Marcos authorized him to sell the paintings, and he asserts a direct interest in the paintings originating from a $300,000 loan made to Marcos and a $500,000 loan which Braemer guaranteed for Marcos, both of which were collateralized by the paintings. Braemer Answer ¶¶ 62, 63. The Philippines claims that the paintings were acquired with Philippine Government funds for the benefit of the Philippines, or that the paintings were acquired with funds which Marcos or her husband illegally obtained during Ferdinand Marcos's tenure as President of the Philippines. Philippines Answer ¶ 7. In either case, the Philippines claims to be the rightful owner of the paintings. Marcos now seeks to intervene in this action, claiming that the paintings were acquired with her personal funds and remain her property. Marcos Aff. ¶ 3. She denies that a lien or security interest in the paintings was given to Braemer and, in the alternative, claims a right to the paintings after payment of the amount due Braemer. Marcos Answer ¶ 5; Singleton Aff. ¶ 4.

There is a second similar interpleader action before this Court where an alleged secured creditor of Marcos and the Philippines are contesting the ownership of various pieces of art work. *Sotheby's Inc. v. Garcia and The Republic of the Philippines*, 802 F.Supp. 1058 (S.D.N.Y.1992) (*Sotheby's*). Marcos is not attempting to intervene in the *Sotheby's* action.

## DISCUSSION

Marcos's motion for leave to intervene in this action is granted with conditions be-

cause she has complied with the requirements of Rule 24(a), Fed.R.Civ.P.. Rule 24(a)(2) allows anyone, upon timely application, to intervene in an action if:

> [T]he applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Marcos's intervention motion is timely; Marcos has an interest in the paintings that are the subject of this interpleader action; Marcos's interest is likely to be prejudiced by the action; and the existing parties are unlikely to adequately protect Marcos's interest.

*Timeliness*

 Timeliness is a flexible determination made in the discretion of the Court. *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 594–95 (2d Cir.1986). Among the factors to be considered in determining whether a motion to intervene is timely are (1) how long the applicant knew of his interest before making the motion; (2) prejudice to the existing parties from any such delay; (3) Prejudice to applicant if the motion is denied; (4) other unusual circumstances. *Farmland Dairies v. Comm'r of New York Dep't of Argic.*, 847 F.2d 1038, 1044 (2d Cir.1988). Marcos's decision to apply for intervention was made approximately five months after the initial complaint was filed. However, all parties knew of Marcos's potential intervention from the inception of the action, and the delay was caused by settlement discussions between Marcos and the Philippines in a California action which may have disposed of this matter as well. We believe Marcos's delay was not unreasonable given the complex and politically sensitive international implications of this action. The existing parties have not been unduly preju-

---

Woman", Pierre Auguste Renoir's "Jeune Fille au Chien", and Pierre Auguste Renoir's "Jeunes Filles au bord de l'eau" (collectively "the paintings"). Compl. ¶ 6.

diced by the delay because the addition of Marcos does not require altering a scheduled trial date on which they may have relied.[2] However, as stated below, Marcos's interest is very likely to be prejudiced if her intervention is denied.

### Interest

■ Marcos has an interest in the paintings in question. She has filed an affidavit with her motion which claims that the paintings were acquired with her personal funds and hung in her Olympic Tower residence in New York City. In addition, Marcos disputes Braemer's alleged lien on the paintings. The Philippines has submitted a default judgment of July 1987 which indicates that Marcos's Olympic Tower residence was held in a constructive trust for the Philippines. Phil. Surreply Ex. A ¶ 2. However, this judgment does not make any reference to the contents of the premises, nor do we wish to try the merits of Marcos's interest in determining this motion. Marcos has alleged and affirmed an interest in the paintings sufficient to support her motion to intervene. *John v. Sotheby's*, 141 F.R.D. 29, 35 (S.D.N.Y.1992) (claiming ownership of the object of litigation was a sufficient interest to allow intervention).

### Possible Prejudice and Lack of Adequate Representation

■ Marcos's interest may be impaired by the action and is not adequately protect-

ed by the existing parties. Marcos's alleged interest is contrary to the interest of both existing parties. Marcos claims an interest in the paintings superior to that of the Philippines, and she disputes Braemer's alleged security interest in the paintings. Thus, Braemer can not adequately protect Marcos's interest. Furthermore, the Philippines asserts that a joint tentative settlement of this action and the *Sotheby's* action has been reached and that Marcos's intervention will destroy this agreement. If Braemer were adequately protecting Marcos's interests in these negotiations, the addition of Marcos as a party would not disrupt the agreement. However, since the loan at issue in the *Sotheby's* action is under-collateralized while the loan at issue here is over-collateralized, we believe that this over-collateralization will be somehow divided among the existing parties to both actions pursuant to the joint settlement agreement. If Marcos has an interest in either the paintings or the over-collateralized portion thereof, this settlement will defeat that interest. We will not deprive Marcos of her day in court simply to allow the speedy but possibly unjust disposition of the two actions before us.[3]

### CONCLUSION

Marcos fulfills all the requirements of Rule 24(a)(2) and, her motion to intervene is, therefore, granted subject to the following conditions:

*Reeves v. Wilkes*, 754 F.2d 965, 971 (11th Cir.), reh. denied, 761 F.2d 698 (1985); *Culbreath v. Dukakis*, 630 F.2d 15, 22 (1st Cir.1980); *United States v. Allegheny–Ludlum Indus., Inc.*, 553 F.2d 451, 453 (5th Cir.1977), cert. denied sub nom., 435 U.S. 914, 98 S.Ct. 1467, 55 L.Ed.2d 505 (1978). The parties in this case will not be prejudiced by the intervention because the proceedings have not reached such an advanced stage nor does this case involve complex equitable class remedies.

**2.** The Philippines argues that the existing parties will be prejudiced by Marcos' intervention because it will destroy the parties' joint tentative settlement of this case and the *Sotheby's* case. Although a motion to intervene may be denied when it would jeopardize an existing settlement, *Farmland*, 847 F.2d at 1044, this is usually done in cases where settlement occurs at an advanced stage of litigation. In *Farmland* the defendant, New York State, had obtained an administrative judgment on the merits which was then overturned by the United States District Court. Instead of appealing this judgment, New York State settled the matter. Only upon learning of New York State's election not to appeal did the would-be intervener in *Farmland* make its unsuccessful motion. The other cases cited by the Philippines all involve a court's unwillingness to upset an affirmative action settlement by allowing intervention at a late stage of negotiations.

**3.** The Philippines claims that Marcos's interest will not be adversely affected by this action because she is free to pursue her interests in other actions in the Philippines or elsewhere. However, a requirement that Marcos institute a separate action is too great a burden on her interest. *John*, 141 F.R.D. at 35.

(1) Marcos must make all necessary applications to the Philippine Government to allow her to travel to New York for a deposition in this matter at least 7 days before trial.

(2) If the Government of the Philippines grants her the right to travel, Marcos must appear for a deposition in New York at least 7 days before trial.

(3) If the Government of the Philippines denies Marcos the right to travel to New York for this deposition, Marcos must make herself available for a deposition in the Philippines at least 30 days before trial.

SO ORDERED.