**FIRST INTERSTATE BANK OF OREGON, N.A., Plaintiff,**

v.

**UNITED STATES of America, by and through the INTERNAL REVENUE SERVICE, Hoyt & Sons Ranch Properties Nevada, Limited, a Nevada limited partnership, and Hoyt & Sons Ranch Properties California, Limited, a California limited partnership, Defendants.**

Civ. No. 94–917–HA.

United States District Court, D. Oregon.

March 30, 1995.

O. Meredith Wilson, Jr., Timothy R. Harmon, Lane Powell Spears & Lubersky, Portland, OR, for plaintiff.

Kristine Olson Rogers, U.S. Atty., Dist. of Or., William W. Youngman, Asst. U.S. Atty., Portland, OR, W. Carl Hankla, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for defendant U.S.

William D. Cramer, William D. Cramer, Jr., Cramer & Mallon, Burns, OR, for defendant Hoyt & Sons Ranch Properties Nevada, Ltd.

OPINION

HAGGERTY, Judge:

This is an interpleader action brought by plaintiff, First Interstate Bank of Oregon, N.A. ("FIOR"), to resolve competing claims to $28,179.91 (the "disputed funds") held by FIOR in a checking account. FIOR alleges that it is a disinterested stakeholder, and that it may be exposed to multiple liability and vexatious litigation unless it is allowed to interplead the disputed funds into the court for a determination of the rights of the claimants thereto. FIOR specifically moves the court for an order (1) requiring the disputed funds to be deposited with the court; (2) discharging it from liability as to the disputed funds; and (3) enjoining all parties to this action from commencing any other action against it concerning the disputed funds. FIOR further moves the court for an order awarding it the reasonable attorneys' fees and costs it has incurred in bringing this interpleader action. These motions are presently before the court.

## BACKGROUND

At all times relevant to the instant action, defendant Hoyt & Sons Ranch Properties Nevada, Limited ("Hoyt") has maintained a checking account at the Burns, Oregon branch office of FIOR. The account number of this checking account is 1400018570, and on the signature card corresponding to the account, Hoyt represented that its taxpayer identification number is 88–0266510. The funds in the account have, at all material times, totaled $28,179.91.

On June 15, 1994, the Internal Revenue Service ("IRS") served a "Notice of Levy" on FIOR seeking unpaid tax assessments owed by "Hoyt & Sons Ranch Properties."[1] The IRS levy indicated that the subject taxpayer owed a total of $1,114,435.17 in unpaid taxes, and explained that a lien for this amount had been secured. The levy instructed FIOR that it was required to withhold and remit to the IRS all of the subject taxpayer's property and rights to property, including bank

---

[1] The subject taxpayer specifically named in the IRS levy was "Hoyt & Sons Ranch Properties As Nominee, Alter Ego, Transferee, or Agent of" certain entities named in the levy.

deposits, that it possessed.[2] The levy expressly stated that it "include[d], but [was] not limited to account number 1400018570." Interestingly, however, the levy indicated that the identifying number for the subject taxpayer was 68–0000274, not 88–0266510.

On June 15, 1994, FIOR mailed a letter and a copy of the IRS levy to Hoyt. In the letter, FIOR indicated that the levy named "Hoyt & Sons Ranch Properties" as the subject taxpayer, and that the levy specifically identified account number 1400018570 as within its scope. The letter further indicated that FIOR intended to comply with the levy and remit the balance of the aforementioned account to the IRS in 21 calendar days.

On June 21, 1994, FIOR received a letter from Hoyt's attorney. In this letter, FIOR was instructed that:

> [T]here are two Hoyt & Sons Ranch Properties limited partnerships. One is a California partnership with a tax identification number 68–0000274 which is shown on the notice of levy. The other is a Nevada limited partnership with a tax identification number of 88–0266510 which you have on your signature card for [account number 1400018570].
>
> I am formally notifying you that your depositor, my client, is not, and never has been, the alter ego of the parties against whom the levy is being pursued.

The letter also declared that the levy was illegal, and advised FIOR that if the funds deposited in account number 1400018570 were turned over to the IRS, FIOR would undoubtedly face legal repercussions.[3]

On June 30, 1994, counsel for FIOR responded, by way of letter, to Hoyt's counsel, stating that:

2. FIOR was, however, instructed not to remit more than the total amount owed by the subject taxpayer.

3. The letter from Hoyt's attorney explicitly forewarned of a lawsuit for wrongful handling of the account. The letter also offered the following foreboding language:
   In the face of this clear notice that you are in error, you are further advised that it is probable that my clients will seek punitive damages from you for this deliberate, wrongful, mali-

Failure to honor the levy would expose FIOR to liability for the full amount in the account identified in the levy plus substantial penalties. Your demand letter, and the information in it, will not protect FIOR from this liability. Rather, the Internal Revenue Code and Regulations establish a procedure for obtaining the release of a levy.... If your client contests the levy, it must follow those procedures.

[U]nless your client obtains a release of the Internal Revenue Service levy, FIOR will file an interpleader action and deposit the disputed funds into court.

Hoyt failed to secure a release of the IRS levy. Accordingly, in early July of 1994, FIOR filed a complaint in interpleader in the Circuit Court for the State of Oregon for the County of Multnomah. Shortly thereafter, the federal defendant, the United States of America ("United States"),[4] removed this action to federal court.

On September 19, 1994, Hoyt filed an answer to the interpleader complaint. Concurrent with the filing of the answer, Hoyt's general partner, Darrel Smith, brought cross-claims against FIOR, the United States, and two employees of the IRS. The essence of Hoyt's answer and cross-claims is that issuance of the IRS levy was wrongful, and as a result, it is entitled, at a minimum, to immediate possession of the disputed funds free of any encumbrances.

The United States subsequently filed an answer in which it amended its original claim to the disputed funds. The United States now asserts a claim to $11,415.56 of the disputed funds.

## DISCUSSION

1. *Interpleader*

■ "Rooted in equity, interpleader is a cious act which greatly harms an ongoing business.

4. In its answer, the United States claims that it was improperly named as "United States of America, by and through the Internal Revenue Service" in the caption of the complaint. The United States contends that the IRS "is not an entity subject to suit." United States' Answer, at 1 n. 1 (citing *Blackmar v. Guerre*, 342 U.S. 512, 515, 72 S.Ct. 410, 412, 96 L.Ed. 534 (1952)).

handy tool to protect a stakeholder[5] from multiple liability and the vexation of defending multiple claims to the same fund." *Washington Elec. Coop., Inc. v. Paterson, Walke & Pratt, P.C.,* 985 F.2d 677, 679 (2d Cir.1993). Interpleader allows a plaintiff stakeholder to join in a single action those parties who are or might assert claims to a common fund held by the stakeholder. *See* 7 Charles A. Wright et al., Federal Practice and Procedure § 1702, at 493 (2d ed. 1986); *see generally* Fed.R.Civ.P. 22; 28 U.S.C. § 1335; ORCP 31. An interpleader action usually encompasses two distinct procedurally stages. First, the court determines the propriety of interpleading the adverse claimants and relieving the stakeholder from liability. The second stage involves an adjudication of the adverse claims of the defendant claimants. 3A James WM. Moore & Jo D. Lucas, Moore's Federal Practice §§ 22.14[1] and [2] (2d ed. 1994); *see also Cripps v. Life Ins. Co. of North America,* 980 F.2d 1261, 1265 (9th Cir.1992) (describing an interpleader action as follows: "[T]he 'stakeholder' of a sum of money sues all those who might have claim to the money, deposits the money with the district court, and lets the claimants litigate who is entitled to the money.").

■ The Supreme Court has emphasized that interpleader is a remedial device which is to be applied liberally. *State Farm Fire & Casualty Co. v. Tashire,* 386 U.S. 523, 533, 87 S.Ct. 1199, 1204–05, 18 L.Ed.2d 270 (1967). It follows that interpleader relief is not to be denied merely because the possibility of multiple liability or multiple litigation is remote or rests on tenuous grounds. *Sotheby's, Inc. v. Garcia,* 802 F.Supp. 1058, 1065 (S.D.N.Y. 1992); 7 Charles A. Wright et al., Federal Practice and Procedure § 1704, at 504 (2d ed. 1986). Moreover, the right to interpleader is not incumbent upon a stakeholder showing that it is in jeopardy of multiple liability, as well as multiple litigation. Instead, "[a] stakeholder, acting in good faith, may maintain a suit in interpleader to avoid the vexation and expense of resisting adverse claims, even though he believes only one of them is meritorious." *New York Life Ins. Co. v. Welch,* 297 F.2d 787, 790 (D.C.Cir.1961); *see also National Fire Ins. Co. v. Sanders,* 38 F.2d 212, 214 (5th Cir.1930) (the fundamental purpose of interpleader is to guard against double vexation); *A/S Krediit Pank v. Chase Manhattan Bank,* 155 F.Supp. 30, 33 (S.D.N.Y.1957) ("The office of modern interpleader is both to protect against possible double liability to actual claimants and against possibility of vexatious multiple litigation."), *appeal dismissed as frivolous,* 303 F.2d 648 (2d Cir.1962).

■ In the instant action, it is undisputed that FIOR is a disinterested stakeholder. It is further undisputed that FIOR has been presented with competing claims to the fund it is holding. Nevertheless, each of the adverse claimants—the United States and Hoyt[6]—oppose the specific interpleader relief sought by FIOR. Although the United States does not oppose FIOR's request to deposit the disputed funds with the court, it does oppose FIOR's requests for (1) an order enjoining the parties to this action from commencing any future action against FIOR regarding the disputed funds and (2) an order discharging FIOR from liability as to the disputed funds. In subtle contrast, Hoyt opposes FIOR's request for interpleader relief in its entirety.

### A. Threat of Multiple Liability or Multiple Litigation

The United States contends that FIOR is not entitled to interpleader relief in the form

---

5. The term stakeholder is commonly used in interpleader actions to describe a person or entity who possesses a fund to which adverse claims are made, but who personally has no claim or interest in the fund. *See New York Life Ins. Co. v. Lee,* 232 F.2d 811, 814 (9th Cir.1956). However, the existence of a neutral stakeholder is not a prerequisite to interpleader jurisdiction. *Indianapolis Colts v. Mayor and City Council of Baltimore,* 733 F.2d 484, 486 (7th Cir.1984), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985).

6. FIOR's complaint in interpleader names Hoyt & Sons Ranch Properties California, Limited ("Hoyt of California"), as a defendant. In other words, FIOR contends that Hoyt of California is a potential claimant of the disputed funds. As of the date of this Opinion, however, Hoyt of California has neither filed an answer nor in any way communicated to the court that it might have a valid claim to the disputed funds.

of an order discharging it from liability because FIOR faced no genuine threat of multiple liability with respect to the disputed funds. The United States specifically contends that had FIOR honored the IRS levy, it would have been shielded from any potential liability to Hoyt pursuant to 26 U.S.C. § 6332(e).[7] Even if this assertion by the United States is accurate,[8] it does not preclude FIOR from obtaining the interpleader relief it seeks.

As indicated above, interpleader is to be granted in instances where a stakeholder faces a legitimate fear of multiple litigation, irrespective of the merits of the competing claims. *See generally* 3A James WM. Moore & Jo D. Lucas, Moore's Federal Practice § 22.02[1] (2d ed. 1994) (typically, one or more of the claims will be void of merit, "but that alone may not relieve the stakeholder of a substantial risk of vexatious litigation"). The record before this court clearly reflects that FIOR faced a real possibility of defending an unwanted lawsuit had it simply remitted the disputed funds to the IRS. Indeed, Hoyt explicitly informed FIOR that by honoring the levy it would be inviting litigation.

Hoyt also contends, but for disparate reasons, that FIOR was not confronted with a genuine threat of multiple liability. Hoyt argues that the IRS levy is invalid because it contains a taxpayer identification number which differs from Hoyt's taxpayer identification number. Hoyt further argues that FIOR should have known this because the error was apparent on the face of the levy. Therefore, according to Hoyt, FIOR could have safely ignored the levy.

In dismissing Hoyt's argument, I will simply make three observations. First, the single discrepancy noted by Hoyt certainly did not entitle FIOR to simply disregard the otherwise facially valid levy. Second, had the invalidity of the levy been as patently obvious as Hoyt indicates then Hoyt should have resorted to the statutory procedures specifically designed for a taxpayer to obtain release from an erroneous levy. Lastly, even if Hoyt correctly asserts that the IRS levy is invalid, it is not the obligation of FIOR, as the stakeholder, to reach that legal conclusion. *Sotheby's,* 802 F.Supp. at 1065 ("[A] party is not required to evaluate the merits of conflicting claims at its peril; rather, it need only have a good faith concern about duplicitous litigation and multiple liability if it responds to the requests of certain claimants and not to others."); *see also Massachusetts Mut. Life Ins. Co. v. Morris,* 61 F.2d 104, 105 (9th Cir.1932).

In sum, because FIOR legitimately feared that the competing claims to the disputed funds might expose it to multiple liability or multiple litigation, and because FIOR instituted this interpleader action in good faith to resolve the competing claims, it is entitled to be discharged from liability. *See New York Life Ins. Co. v. Connecticut Dev. Auth.,* 700 F.2d 91, 96 (2d Cir.1983) (disinterested stakeholder may be ordered discharged unless there exists serious charges that interpleader action was commenced in bad faith); *see also Truck–A–Tune, Inc. v. Re,* 856 F.Supp. 77, 81 (D.Conn.1993) (lack of good faith alone generally is insufficient basis to dismiss an interpleader complaint). FIOR shall place the disputed funds into the registry of this court. Thereafter, this court will enter an order dismissing FIOR from this action and releasing it from further liability as to the disputed funds.

### B. *Anti–Injunction Act*

The United States argues that this court lacks jurisdiction to grant FIOR the injunctive relief it requests. More precisely, the United States argues that such an injunction is impermissible under the Anti–Injunction Act, 26 U.S.C. § 7421, which forbids

---

7. 26 U.S.C. § 6332(e) provides that:

    Any person in possession of ... property or rights to property subject to levy upon which a levy has been made who, upon demand by the [IRS], surrenders such property or rights to property ... to the [IRS] ... shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender....

8. FIOR contends that the IRS regulations interpreting 28 U.S.C. § 6332(e) reveal that the statutory grant of immunity is conditional, not absolute. FIOR further contends that the conditions imposed by the regulations were arguably not satisfied in this case.

"suit[s] for the purpose of restraining the assessment or collection of any tax. . . ." 26 U.S.C. § 7421(a). The essence of the United States' argument is that because the disputed funds are subject to an IRS levy which was issued for the purpose of collecting taxes, any injunctive relief is improper.

The United States' argument is misplaced. As a preliminary matter, this interpleader action is not a suit designed to obstruct the United States in its ability to assess or collect taxes; nor will this action hinder the United States in its efforts to assess or collect taxes. *See Layton v. United States,* 650 F.Supp. 334, 336 (E.D.Va.1986) ("The present case involves only an interpleader action, not a suit to enjoin the collection of any tax."). Rather, to the extent that the United States asserts a valid claim to the disputed funds, a judicial resolution of the competing claims will facilitate the ability of the United States to collect any taxes which might be owing.

Moreover, contrary to any assertion by the United States, should this court grant the injunctive relief sought by FIOR, the ability of the United States to assess or collect taxes from the real party in interest will not, in any way, be adversely impacted. The fact that the United States would be barred from pursuing a future claim against FIOR regarding the disputed funds is of no consequence because the United States has alleged neither that FIOR has any outstanding tax liability nor that FIOR has any interest in the disputed funds.

In short, the injunctive relief sought by FIOR is generally contemplated in interpleader actions, and particularly appropriate in the instant action. *See* ORCP 31B (following deposit of the disputed funds with the court, the court may "enjoin all parties before it from commencing or prosecuting any other action regarding the subject matter of the interpleader action"). Accordingly, once FIOR has placed the disputed funds into the registry of this court, an order enjoining the parties to this action from commencing any further action against FIOR in connection with the disputed funds will be entered.

### 2. *Attorneys' Fees*

■ It is within the discretion of the district court to award attorney fees and costs to a disinterested stakeholder in an interpleader action. *Abex Corp. v. Ski's Enters., Inc.,* 748 F.2d 513, 516 (9th Cir.1984). Courts routinely grant such awards absent a showing of bad faith. *Schirmer Stevedoring Co. Ltd. v. Seaboard Stevedoring Corp.,* 306 F.2d 188, 194–95 (9th Cir.1962). The stakeholder will typically be compensated out of the interpleader fund deposited in the court. *Massachusetts Mut.,* 61 F.2d at 105. A court may not, however, reduce a fund impressed by a federal tax lien to award attorney fees and costs to an interpleader plaintiff when such an award would jeopardize satisfaction of the federal tax lien. *Abex,* 748 F.2d at 516–17.

Pursuant to the discretion vested in this court, and in light of Rule 31C of the Oregon Rules of Civil Procedure,[9] this court grants FIOR's motion for the reasonable attorneys' fees and costs it has incurred in bringing this interpleader action. FIOR shall be paid its reasonable attorneys' fees and costs from the funds placed into the registry of this court. FIOR shall file an affidavit in support of the attorneys' fees and costs it has reasonably incurred in bringing this interpleader action.

This court is mindful that the federal tax lien has statutory priority over FIOR's ability to diminish the fund by an award of attorneys' fees and costs. *Abex,* 748 F.2d at 516. However, the supremacy of the federal tax lien is not, in this case, an obstacle to awarding FIOR its reasonable attorneys' fees and costs because the United States claims only $11,415.56 of the disputed funds which total $28,179.91. *Cf. Id.* at 517 (reversing an award of attorney fees because it

---

9. ORCP 31C provides:
   In any suit or action in interpleader filed pursuant to this rule by any party . . . the party filing the suit or action in interpleader shall be awarded a reasonable attorney fee in addition to costs and disbursements upon the court ordering that the funds or property interpled be deposited with the court . . . and that the party filing the suit or action in interpleader be discharged from liability as to the funds or property. The attorney fees awarded shall be assessed against and paid from the funds or property ordered interpled by the court.

*drained* the fund before federal tax liens were satisfied) (emphasis added).

## CONCLUSION

For the reasons provided above, plaintiff's motion (doc. # 8) for order to deposit disputed funds with court and discharging plaintiff is granted, and plaintiff's supplemental motion (doc. # 15) for award of attorneys' fees is granted.

## ORDER

For the reasons stated in the accompanying Opinion, plaintiff's motion (doc. # 8) for order to deposit disputed funds with court and discharging plaintiff is granted, and plaintiff's supplemental motion (doc. # 15) for award of attorneys' fees is granted.

IT IS SO ORDERED.