Stephen W. NOEY, Appellant,

v.

Mark S. BLEDSOE, Appellee.

No. S–7905.

Supreme Court of Alaska.

April 23, 1999.

Gregg B. Brelsford, Burke, Bauermeister & Brelsford, P.L.L.C., Anchorage, for Appellant.

Mark S. Bledsoe, Law Offices of Mark S. Bledsoe, Anchorage, for Appellee.

Before COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

BRYNER, Justice.

## I. *INTRODUCTION*

In an interpleader trial involving a fee dispute between an attorney and his client, the superior court found for the attorney. The client appeals, raising several procedural and substantive claims of error. We find no error and affirm the superior court's judgment.

## II. *FACTS AND PROCEEDINGS*

Stephen Noey hired Mark Bledsoe to represent him in January 1990. The parties' oral contract provided that Noey would pay

Bledsoe $100–$140 per hour plus costs. Bledsoe primarily worked on an Anchorage superior court case, *Noey v. Cannone, et al.*[1] In November 1993, as that case approached its scheduled trial date in March 1994, Noey hired attorney Mark Davis as co-counsel to assist Bledsoe on anti-trust issues.

Noey apparently continued to pay Bledsoe's bills regularly until January 1994. Then he stopped paying. In March 1994 the parties in *Noey v. Cannone* began mediating their dispute. They reached a tentative settlement the day before trial and finalized the settlement agreement in November 1994. The terms of the agreement called for the settlement proceeds to be paid into an account held by Davis.

Shortly before the final settlement, Bledsoe learned that Noey did not intend to pay Bledsoe's outstanding bills, which, by then, totaled $45,545.17. By letter dated November 28, 1994, Bledsoe informed Davis and Noey that he asserted a "retaining and/or charging lien" against the settlement funds for that amount. Upon receipt of the funds, Davis retained them in his account, in accordance with Bledsoe's lien.

On January 19, 1995, Bledsoe wrote to Noey, seeking to resolve the dispute over his unpaid fees and specifically suggesting that fee arbitration by the Alaska Bar Association might be "well suited to resolve our dispute." Bledsoe also indicated that he "would be willing to submit this matter to the fee arbitration committee if you would."

Noey evidently did not respond to this offer. Bledsoe thus requested Davis to file an interpleader action. On February 1, 1995, Davis informed Noey of Bledsoe's request, stating:

> I told Mr. Bledsoe that I would not interplead the funds as yet until I had an opportunity to communicate with you and tell you that you need to attempt to resolve your differences with him in order to avoid an interpleader action. However, if you are not able to start a dialog with Mr. Bledsoe[,] I shall be required to interplead the funds.

Davis filed a complaint in interpleader in June 1995. The complaint alleged that Noey and Bledsoe both claimed a right to the entire $45,545.17 still held by Davis; it requested permission to deposit the funds with the court, relief from liability, and "a judgment declaring the rights of each defendant to the monies." On July 17, 1995, and again on August 25, Bledsoe notified Noey by letter of his right to demand fee arbitration under Alaska Bar Rule 39. Bledsoe's letters reminded Noey:

> The same information as above was provided to you by my letter of January 19, 1995, and the position stated in that letter is repeated. We would certainly be more than willing to submit the dispute to fee arbitration if you are desirous of that alternative. If you need any further information concerning this, please feel free to contact this office or the Alaska Bar Association directly regarding your right to arbitrate the fee dispute.

Noey did not pursue fee arbitration. In early August, he and Bledsoe separately answered Davis's interpleader complaint, asserting competing claims to the disputed settlement funds. Noey handled the case himself, without an attorney.

The court initially set trial of the interpleader action for May 1996 but eventually postponed it until July 1. On March 8, 1996, Davis moved to withdraw from the case, and, as "a satisfactory means of allowing Plaintiff to disentangle himself from the controversy between the parties," he proposed to deposit the disputed funds with the court. Bledsoe did not oppose Davis's motion. Noey did not object to Davis's withdrawal or to his proposal to deposit the funds with the court upon withdrawal. But Noey did object to proceeding with the proposed trial schedule against Bledsoe. He argued that the "interpleader action is inappropriate because it wastes the court and the judges['] time for a matter that is better suited to the fee arbitration process of the Alaska Bar Association." Noey proposed that the court dismiss the interpleader action entirely and refer the fee dispute to arbitration. The court granted Davis's mo-

1. No. 3AN–88–7719.

tion to withdraw; its order did not mention Noey's proposed referral.

On June 12, 1996, less than three weeks before trial, Noey petitioned the Bar Association to arbitrate the fee dispute. On June 24, a week before trial, he notified the court of his petition and moved to stay his trial pending arbitration. Bledsoe opposed the motion, arguing that it was untimely under the pretrial order and that Noey had waived his right to arbitration under Alaska Bar Rule 39(d). In reply, Noey claimed procedural confusion: "Had this pro per defendant clearly understood his procedural rights, a petition for fee arbitration would have been filed immediately upon the undersigned's being served with Plaintiff's summons and complaint." Three days before the July 1 trial, the court denied Noey's motion.

After a one-day trial, the court ruled from the bench in Bledsoe's favor and later entered judgment accordingly. Several weeks after the trial, through newly-retained counsel, Noey moved to alter or amend the judgment, or, alternatively, for a new trial. His motion raised numerous new legal issues and generally complained that Noey had been treated unfairly. The court denied the motion, rejecting Noey's claims as meritless and suggesting that Noey was acting in bad faith:

> Noey's position in this case is disingenuous. Like the orphan who kills his parents

and then pleads for mercy, Noey repeatedly ignored his options and obligations as a party to these proceedings, and now seeks the court's reversal of what has transpired as a result of his own conduct.

Noey appeals, renewing many of the issues he first raised in his post-trial motion.

## III. DISCUSSION

### A. The Trial Court Did Not Improperly Deny Noey His Right to Arbitrate the Fee Dispute.

 Noey asserts that the trial court erred in refusing him the right to submit the fee dispute to binding arbitration by the Alaska Bar Association. Bledsoe responds that Noey waived this right by failing to assert it in a timely manner and by actively litigating the interpleader action.[2]

In any civil action to recover fees for professional services rendered by an attorney, a client has a right to binding arbitration.[3] Alaska Bar Rule 39(a) requires attorneys to serve their clients with written notice of this right "[a]t the time of service of a summons in [the] civil action[.]"[4] To claim this right, the client must petition the Alaska Bar Association for arbitration within twenty days of notification.[5] Once filed, the petition entitles the client to stay the legal action.[6] But the

---

2. Whether Noey waived his right to arbitrate is a question of fact; we will set aside the trial court's finding of a waiver only if it is clearly erroneous. *See Airoulofski v. State*, 922 P.2d 889, 894 nn. 4–5 (Alaska 1996).

3. *See* Alaska Bar Rule 39.

4. Alaska Bar Rule 39(a) provides:

> (a) *Notice Requirement by Attorney to Client.* At the time of service of a summons in a civil action against his or her client for the recovery of fees for professional services rendered, an attorney will serve upon the client a written "notice of client's right to arbitrate or mediate," which will state:
> You are notified that you have a right to file a Petition for Arbitration of Fee Dispute or a Request for Mediation and stay this civil action. Forms and instructions for filing a Petition for Arbitration of Fee Dispute or a Request for Mediation and a motion for stay are available from the Alaska Bar Association, 510 L Street, Suite 602, Anchorage, AK 99501–1958, (907) 272–7469. If you do not file the Petition

for Arbitration of Fee Dispute or a Request for Mediation within twenty (20) days after your receipt of this notice, you will waive your right to arbitration or mediation.
> Failure to give this notice will be grounds for dismissal of the civil action.

5. Alaska Bar Rule 39(b) provides:

> (b) *Stay of Civil Proceedings.* If an attorney, or the attorney's assignee, commences a fee collection action in any court, the client may stay the action by filing notice with the court that the client has requested arbitration of the fee dispute by the Bar within twenty (20) days of receiving the notice of the client's right to arbitration. This notice will include proof of service on the attorney or the attorney's assignee. If a civil action has been filed, the Alaska Bar Association must receive an order of stay prior to commencing arbitration.

6. Alaska Bar Rule 39(c) provides:

> (c) *Stay of Non–Judicial Collection Actions.* After a client files a petition, the attorney will

right to arbitrate is lost if the client either fails to file the petition for arbitration within the prescribed twenty-day period or, after receiving notice of the Bar Association's fee dispute resolution program, "commences or maintains a legal action or files any pleading seeking judicial resolution of the fee dispute." [7]

Bledsoe first informally notified Noey of the Alaska Bar Association's arbitration procedures on January 19, 1995—six months before Davis filed the interpleader action. On July 17, 1995, shortly after Davis filed the interpleader complaint, Bledsoe formally notified Noey by letter of his right to arbitrate, in accordance with the notice requirements of Alaska Bar Rule 39(a).[8] He re-sent the notification letter by certified mail on August 25.

Noey failed to petition the Bar Association for fee arbitration until the following year. On April 1, 1996, Noey opposed interpleader, and in doing so requested the court to "refer" the matter to the Bar Association. This was the first time he expressed any interest in arbitration. Noey did not actually file a petition to arbitrate with the Bar, as required by Rule 39, until June 12, 1996. In the interim, by answering Davis's complaint and asserting his right to the interpleaded funds, Noey actively participated in the interpleader action.

■ Noey nevertheless suggests that his efforts to seek arbitration were timely because Davis filed the interpleader action, not Bledsoe. Noey contends that a suit to recover attorney's fees does not trigger Rule 39's filing deadline unless the suit is filed by the attorney to whom the fees are owed. In support of this contention, Noey quotes Rule 39(a)'s language requiring notice "[a]t the time of service of a summons in a civil action *against his or her client* for the recovery of fees for professional services rendered." [9]

■ Noey misreads this language. Although Rule 39(a) requires attorneys to provide notice of actions "against" their clients, the rule does not limit this requirement to actions personally filed by attorneys. The rule's reference to "service of *a* summons in *a* civil action" literally applies to any fee recovery action against an attorney's client, regardless of who files it. In our view, this language is sufficiently broad to encompass an interpleader action filed by a disinterested third-party.

As Bledsoe persuasively argues, Noey's proposal to interpret the rule more narrowly would create an odd loophole in the notice requirement. A narrow interpretation would allow attorneys to escape Rule 39's notice requirement, and potentially bypass arbitration, by pursuing fee recovery through interpleader actions. To read Rule 39(a) in this manner would conflict with the strong public policy favoring arbitration.[10]

■ Noey suggests that if this court disagrees with his interpretation of Rule 39, the language of the rule is at best unclear, and he misunderstood it. Asserting that the trial court disregarded his repeated requests to refer the dispute to arbitration, he insists that strictly enforcing the rule's twenty-day requirement against a pro se litigant amounts to "a procedural technicality to avoid arbitrating the fee dispute."

This argument is not persuasive. The trial court found Noey to be a sophisticated pro se litigant who had received multiple notices of

---

stay any non-judicial collection actions related to the fee in dispute pending the outcome of the arbitration.

7. Alaska Bar Rule 39(d) provides:

 (d) *Waiver of Right to Request or Maintain Arbitration.* A client's right to request or maintain an arbitration is waived if:
 (1) the attorney files a civil action relating to the fee dispute, and the client does not file a petition for arbitration of a fee dispute within twenty (20) days of receiving the "client's notice of right to arbitrate" pursuant to paragraph (a) of this rule; or

 (2) after the client received notice of the fee dispute resolution program, the client commences or maintains a civil action or files any pleading seeking judicial resolution of the fee dispute, except an action to compel fee arbitration, or seeking affirmative relief against the attorney for damages based upon alleged malpractice or professional misconduct.

8. *See* Rule 39(a), *supra* note 4.

9. *See* Rule 39(a), *supra* note 4 (emphasis added).

10. *See A. Fred Miller, Attorneys at Law, P.C. v. Purvis,* 921 P.2d 610, 616–17 (Alaska 1996).

the fee arbitration program, but who chose to sit on his rights for almost a year before petitioning for a stay on the eve of trial. The record supports the trial court's view. Although informed of the Bar Association's arbitration process and encouraged to arbitrate well before the interpleader action, and although formally notified of his arbitration right when the action was filed in July 1995, Noey made no effort to petition for arbitration until June of the following year. Noey did ask the court to "refer" the fee dispute to arbitration on April 1, 1996, but at that time he had not petitioned for arbitration. He failed to do so until three weeks before trial and did not apply for a stay pending arbitration until the week before trial.

We have frequently recognized that pro se litigants who make good faith efforts to comply with court rules should not be held to strict procedural requirements.[11] But we have not excused them from making good faith efforts to assert their rights.[12] We conclude that the court was not clearly erroneous in finding that Noey waived his right to fee arbitration under Rule 39 by failing to assert it in a timely manner.

### B. The Trial Court Correctly Conducted the Interpleader Proceedings.

 Noey next contends that the superior court mismanaged the interpleader proceedings. Interpleader is an equitable remedy designed to protect a "stakeholder"[13] from multiple liability and from the burden of defending multiple, conflicting claims.[14] It allows a plaintiff stakeholder to join in a single action all those parties who are assert-ing or might assert claims to a common fund held by the stakeholder.[15] In plainer terms, the stakeholder "sues all those who might have claim to the money, deposits the money with the ... court, and lets the claimants litigate who is entitled to the money."[16] By forcing competing claimants to resolve among themselves what is basically their own dispute, interpleader spares stakeholders the need to decide which is the best claim and, in so doing, avoids exposing them to multiple liability.[17]

 Interpleader encompasses two distinct procedural stages. First, the court determines in equity the propriety of interpleading the adverse claimants and relieving the stakeholder from liability; second, it adjudicates at law, to the extent necessary, the adverse claims of the defendant claimants.[18] In this case, Noey alleges error in both stages. He complains that the court had no evidentiary basis for finding interpleader jurisdiction at the first stage; and he complains that it erred at the second stage by failing to require the interpleaded defendants to file issue-framing pleadings.

### 1. The court did not err in the first stage of the interpleader.

Davis's interpleader complaint alleged that he possessed money that both his client, Noey, and his co-counsel, Bledsoe, had claimed as their own. According to the complaint, Noey claimed a right to the fund as a party to the settlement; Bledsoe asserted a possessory right for legal fees owed. In answering Davis's complaint, Noey and Bledsoe both admitted these essential conten-

---

**11.** See, e.g., Collins v. Arctic Builders, 957 P.2d 980, 982 (Alaska 1998).

**12.** See Wright v. Black, 856 P.2d 477, 480 (Alaska 1993).

**13.** First Interstate Bank v. United States, 891 F.Supp. 543, 546 n. 5 (D.Or.1995) (citation omitted) ("The term stakeholder is commonly used in interpleader actions to describe a person or entity who possesses a fund to which adverse claims are made, but who personally has no claim or interest in the fund.").

**14.** Washington Elec. Co-op., Inc. v. Paterson, Walke & Pratt, P.C., 985 F.2d 677, 679 (2d Cir. 1993).

**15.** See 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1702, at 493 (2d ed. 1986 & Supp.1998).

**16.** Cripps v. Life Ins. Co. of N. America, 980 F.2d 1261, 1265 (9th Cir.1992) (citation omitted).

**17.** 7 Charles Alan Wright et al., Federal Practice and Procedure § 1702, at 493–94 (2d ed.1986).

**18.** See Mid–American Indem. Co. v. McMahan, 666 F.Supp. 926, 928 (S.D.Miss.1987); 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1714, at 581–87 (2d ed.1986).

tions, each asserting a claim to the disputed fund.

■ By later requesting to withdraw from the case, Davis implicitly moved for a decree of interpleader.[19] Neither Bledsoe nor Noey objected to Davis's withdrawal. Bledsoe filed a notice of non-opposition. Though Noey opposed Davis's motion, his opposition merely sought to deflect the underlying fee dispute into arbitration. Noey never alleged that Davis had misfiled the action as an interpleader or that the court lacked authority to allow Davis's withdrawal and to proceed with adjudication of Noey's and Bledsoe's conflicting claims.

Noey now argues that the trial court erred in allowing Davis to withdraw without formal proof that an interpleader action was proper. Noey maintains that interpleader was inappropriate because Bledsoe had no valid lien and thus no right to claim the specific funds held by Davis. He asserts that, at the very least, a material question of fact existed as to the validity of Bledsoe's lien. Noey contends that this factual dispute precluded summary adjudication of Davis's motion to withdraw. In essence, then, Noey's first-stage argument asserts that the court improperly granted Davis a judgment on the pleadings. This is a legal point and is subject to de novo review.[20] We conclude that the argument lacks merit.

■ Noey builds his argument on the premise that the stakeholder in an interpleader action cannot be excused, and that the case cannot proceed as an action between two interpleaded defendants without positive proof that both defendants actually have valid claims against the disputed funds. But Noey's premise is faulty.

■ Courts have not adopted a particular procedure for the first stage of interpleader, and the issues are typically framed by motion.[21] Courts agree that, at the first stage, the burden is on the party seeking interpleader.[22] Apparently, some jurisdictions have held that this stage of interpleader is resolved on motion for summary judgment. Others have favored a motion for judgment on the pleadings. Still others have no established procedure.[23] But regardless of this uncertainty as to applicable procedure, there appears to be general agreement that "[t]he primary test for determining the propriety of interpleading ... is whether the stakeholder legitimately fears multiple vexation directed against a single fund."[24] This is an unexacting standard.[25] "[T]o support an interpleader action, the adverse claims need attain only 'a minimal threshold level of substantiality.'"[26]

■ In the first stage of this case, as we have already observed, the parties did not dispute the essential facts for interpleader in their pleadings. Under these circumstances, there was no reason for the court to take independent evidence: "In the absence of a preliminary demonstration of the existence of relevant disputed facts no hearing was required."[27]

■ Noey nonetheless insists that Bledsoe's lien was invalid and that the court should have recognized this invalidity sua sponte. Alaska Statute 34.35.430 provides that an attorney may assert a retaining lien "upon money in the possession of the attorney belonging to the client." Noey argues that because the money in dispute was in

19. Davis essentially moved for judgment on the pleadings. A judgment on the pleadings, like summary judgment, is subject to de novo review. *See McAdoo v. Diaz*, 884 P.2d 1385, 1387 n. 2 (Alaska 1994).

20. *See id.*

21. *See* 7 Charles Alan Wright et al., *Federal Practice and Procedure* § 1714, at 582 (2d ed.1986).

22. *See id.* § 1714, at 583.

23. *See id.*

24. *See id.* § 1704, at 501 (2d ed. 1986 & Supp. 1998).

25. *See Equitable Life Assur. Soc. v. Porter–Englehart*, 867 F.2d 79, 84 (1st Cir.1989).

26. *See id.* (quoting 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1704, at 504 (2d ed.1986) (footnote omitted)).

27. *In re J.B.*, 922 P.2d 878, 881 (Alaska 1996) (citation omitted).

Davis's possession when Bledsoe asserted the lien, the lien was invalid.

Other jurisdictions have allowed attorneys to assert retaining liens over money in the possession of co-counsel and have held co-counsel liable for failure to protect the retaining liens.[28] Alaska has not yet decided the issue. Thus, while the validity of Bledsoe's lien may not have been certain, Davis "legitimately fear[ed] multiple vexation from a single fund." Nothing further was required at the first stage of the action.

Noey also argues that the lien was invalid because Bledsoe and Davis were no longer co-counsel when Davis came into possession of the funds. He argues that this was at least sufficiently in dispute to preclude summary adjudication of the first stage of interpleader. But, again, the relevant inquiry was not whether the lien was actually valid, but rather whether the lien was colorably valid so that Davis would risk liability by ignoring it.

■■■■ A claim of potential liability that is completely devoid of substance will not support interpleader jurisdiction.[29] On the other hand, interpleader jurisdiction "is not

to be denied merely because the possibility of multiple liability or multiple litigation is remote or rests on tenuous grounds."[30] In fact, a stakeholder may institute an interpleader action to avoid the trouble and expense of resisting adverse claims, "even though he believes only one of them is meritorious."[31]

Here, Bledsoe's lien, though not untroubled, was sufficiently colorable to support interpleader. The trial court did not err in granting Davis's motion to withdraw and allowing the case to proceed as an action between Bledsoe and Noey.

2. *The court did not err at the second stage of interpleader by failing to order the parties to file additional issue-defining pleadings.*

■■ Noey argues that, once the court concluded that interpleader was appropriate, it erred in failing to require the parties to plead their claims against one another under either Alaska Civil Rule 8 or 13.[32] He maintains that the purpose of the pleadings is to provide "a *bright line marker* for when [the judicial system] has been formally invoked";

**28.** *See Jones v. Miller,* 203 F.2d 131, 134–35 (3d Cir.1953); *Davidson v. Collier,* 104 Ga.App. 546, 122 S.E.2d 465, 467 (1961); *see also* 7 Am.Jur.2d *Attorneys at Law* § 335 (1997); Thomas G. Fischer, Annotation, *Attorney's Retaining Lien: What Items of Client's Property or Funds Are Not Subject to Lien,* 70 A.L.R.4th 827, 864–65 (1989).

**29.** *See* 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1705, at 507–09 (2d ed.1986).

**30.** *First Interstate Bank v. United States,* 891 F.Supp. 543, 546 (D.Or.1995) (citations omitted).

**31.** *Id.* (quoting *New York Life Ins. Co. v. Welch,* 297 F.2d 787, 790 (D.C.Cir.1961)); *see also Equitable Life Assur. Soc. v. Porter–Englehart,* 867 F.2d 79, 84 (1st Cir.1989) ("[I]t is immaterial whether the stakeholder believes that all claims against the fund are meritorious. Indeed, in the usual case, at least one of the claims will be very tenuous.") (quoting 7 Charles Alan Wright et al., *Federal Practice and Procedure* § 1704, at 504 (2d ed.1986) (footnote omitted)); *Dakota Livestock Co. v. Keim,* 552 F.2d 1302, 1308 (8th Cir.1977) (holding that interpleader jurisdiction extends to potential as well as actual claims).

**32.** Alaska Civil Rule 8 sets out the general rules of pleading. Subsection (a) provides:

(a) *Claims for Relief.* A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim or third-party claim, shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.

Alaska Civil Rule 13 governs counterclaims. Subsection (a) provides:

(a) *Compulsory Counterclaims.* A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon the claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

he says, "[c]learly the court and the prospective defendant need a bright line which unambiguously signals the beginning of the court's involvement in a dispute and which articulates the specific claims that the plaintiff asserts." He argues that this failure deprived the court of jurisdiction to hear the dispute.

Noey's argument has no merit. The jurisdiction of the court was the subject of the first stage of interpleader. Noey was served with a complaint in interpleader, which prayed that Davis be allowed to deposit the funds with the court and withdraw so that Bledsoe and Noey could "argue their respective rights and priorities to this court." Noey and Bledsoe answered the complaint. Noey also acknowledged that he understood the court's order dismissing Davis from the action essentially to be a decree of interpleader, which shifted the focus of the action to "the Mr. Bledsoe–Mr. Noey dispute."

■■■■■ At the second stage of interpleader, new pleadings are unnecessary unless the remaining issues are undefined.[33] The need for further pleadings is thus a practical issue for the trial court to decide on a case-by-case basis. In the present case, Noey never expressed uncertainty about the issues involved in the underlying fee dispute. He cannot plausibly maintain that the parties' original pleadings failed to inform him of Bledsoe's claims. The court did not abuse its discretion in declining to order further pleadings.

### C. The Court Did Not Deny Noey His Right to a Jury Trial.

■■■ Noey separately claims that the trial court's failure to require further pleadings deprived him of his right to a jury trial. He

reasons that, because the first stage of interpleader is an equitable action, he had no right to request a jury trial until the action reached the second stage. And because the court never required Bledsoe to plead contract claims against Noey after it excused Davis from the action, Noey contends that he had no opportunity to request a jury at the second stage.

■■■ This argument is meritless. Alaska Civil Rule 38 provides that any party may obtain a jury trial for any triable issue by demanding the right in writing no later than 10 days after the "service of the last pleading directed to such issue." A party who fails to demand the right in a timely manner waives it.[34] The first stage of interpleader is equitable and did not entitle Noey to a jury trial.[35] Because the second stage of interpleader involved a contract dispute, Noey may well have been entitled to a jury trial.[36] Given the unusual procedural posture of an interpleader action and the potential for pleadings at both the equitable and legal stages of interpleader, Noey may have been confused about precisely when he should request jury trial if he wanted one. But we find no basis for excusing Noey from making any effort at all to assert his rights.

The parties twice met with the court for pretrial conferences. In the resulting pretrial orders, the court clearly stated that a jury trial had not been requested. Noey did not object to these orders. He did not object to the absence of a jury when he appeared for trial. Indeed, he made no mention of a jury trial at all before filing his post-trial motion to amend the judgment, which the trial court expressly found to be disingenuous. In short, we find nothing in the record suggesting that Noey's willingness to pro-

**33.** See Old Colony Ins. Co. v. Lampert, 129 F.Supp. 545, 550–51 (D.N.J.), aff'd per curiam, 227 F.2d 520 (3d Cir.1955) ("To require each interpleaded defendant to reply to each answer would serve no useful purpose. The issues were clearly defined by the answers of all of the claimants to the fund.").

**34.** See Alaska R. Civ. P. 38(d).

**35.** See McGill v. Wahl, 839 P.2d 393, 396 (Alaska 1992).

**36.** See id.; cf. Ross v. Bernhard, 396 U.S. 531, 542 n. 15, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970) (commenting that although historically interpleader was considered a completely equitable action, the trend in the lower courts is to provide a right of jury trial for legal issues raised); Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 510–11, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) (instructing the federal courts to inquire into the legal or equitable nature of each issue in the case in determining whether the litigants have a right to jury trial).

ceed to trial without a jury resulted from procedural confusion. We conclude that Noey was not deprived of his right to a jury trial.[37]

### D. The Court Did Not Err in Conducting Noey's Trial.

Noey raises several trial-related issues, all of which lack merit.

#### 1. Judge Woodward did not err in failing to recuse herself.

Noey's case was assigned to Superior Court Judge Joan Woodward. At the outset of trial, Noey announced his intention to call only two witnesses: Mr. Davis and Mr. Thwaits. Judge Woodward noted that Noey had listed her as a trial witness. Noey responded that he had wanted the judge to testify about some prior rulings in related proceedings. The judge replied that Noey could introduce that evidence without her testimony. Trial proceeded, and Noey made no effort to admit the proposed evidence or to disqualify Judge Woodward.

Noey claims now that the judge should have recused herself sua sponte.[38] He cites AS 22.20.020(a)(3), which bars judges from acting in matters in which they are material witnesses. Since the record fails to establish that Noey actually intended to call Judge Woodward or that the judge actually could have offered any material testimony, Noey's claim is meritless.

#### 2. The court did not impermissibly allow Bledsoe to foreclose on a retaining lien.

Noey argues that by ruling in favor of Bledsoe at trial, the court improperly allowed him to foreclose on a retaining lien. Noey insists that retaining liens are merely possessory and that Bledsoe therefore should have been required to bring a separate action to obtain payment of the underlying debt. But Noey raises this argument for the first time on appeal.[39] At trial he primarily contested the terms of his contract with Bledsoe. While he questioned the validity of Bledsoe's lien, he did not challenge the manner of its enforcement. Moreover, Noey's argument ignores that the interpleader trial was not a mere lien foreclosure; it adjudicated the merits of Noey's legal dispute with Bledsoe, which centered on the existence of his debt to Bledsoe under an implied contract theory. As the superior court correctly observed, the issue at trial was "whether these funds are owed." Thus, the interpleader trial resolved all issues concerning the underlying debt.

#### 3. The court held Bledsoe to his burden of proof.

Noey argues that Bledsoe's burden was to prove that he fully and satisfactorily performed his contract with Noey and that he was entitled to the specific funds at issue. Noey contends that Bledsoe failed to meet his burden because he did not prove that his legal fees were reasonable. Bledsoe responds that he met his burden by testifying about his representation and submitting over 200 pages of billing records. He argues that he had no need to go further in proving the reasonableness of his fees because Noey did not contest the issue.[40]

The record supports Bledsoe's position. At trial, Noey did not dispute the reasonableness of Bledsoe's billings. He focused on the contention that his contract with Bledsoe capped Bledsoe's fees at $15,000. The trial

---

37. *Compare, e.g., Collins v. Arctic Builders*, 957 P.2d 980, 982 (Alaska 1998) (court must inform pro se litigants of specific defects in their pleadings), with *Wright v. Black*, 856 P.2d 477, 480 (Alaska 1993) (pro se litigant must make good faith attempt to comply with judicial procedures in order to benefit from lenient standard). *See also Bauman v. State, Div. of Family & Youth Servs.*, 768 P.2d 1097, 1099 (Alaska 1989) (pro se litigants are expected to acquire general familiarity with and attempt to comply with the rules of procedure).

38. A trial judge's decision not to recuse herself is reviewed for abuse of discretion. *See Wasserman v. Bartholomew*, 923 P.2d 806, 815 n. 25 (Alaska 1996).

39. *See State v. Northwestern Const., Inc.*, 741 P.2d 235, 239 (Alaska 1987) (holding that arguments generally may not be raised for the first time on appeal).

40. The factual findings of the trial court will be upheld unless clearly erroneous. *See State v. Beard*, 960 P.2d 1, 5 (Alaska 1998).

court rejected this contention, finding that Noey had agreed to pay Bledsoe $140 per hour, with no $15,000 cap on total billings. The court ruled that Bledsoe had established his fees by "clear and convincing evidence." It went on to note that Noey did not challenge the reasonableness of Bledsoe's fees and had introduced no evidence indicating that they were unreasonable. Having made these findings, the court commented, "I'm not going to try to analyze [the reasonableness of the fees billed], based on the very small amount of testimony in relation to the very large amount billed here. I'm not going to analyze whether Bledsoe earned those fees, as it were."

Noey spotlights this comment out of context as support for his argument that Bledsoe failed to meet his burden. But viewed in context, the comment merely acknowledges a practical reality: In the absence of any actual dispute or contrary evidence, Bledsoe's testimony and records support an inference that his fees were reasonable. The court had no need to delve deeper into the issue.

### E. The Superior Court Had Jurisdiction to Decide this Case.

Noey argues on appeal that the superior court lacked subject matter jurisdiction over this dispute because jurisdiction was vested in the supreme court. The argument presents a legal question, which is subject to de novo review.[41]

As we have already mentioned, the current fee dispute arose from Bledsoe's representation of Noey in *Noey v. Cannone.* Bledsoe had also represented Noey in another civil action, *Noey v. DEC.*[42] *Noey v. DEC* was pending on appeal before the Alaska Supreme Court when the current interpleader action was tried in the superior court. In his post-trial motion in the interpleader action, Noey suggested that Bledsoe had submitted overlapping bills in *DEC* and *Cannone.* Noey further asserted that he needed more information to determine whether any of the fees Bledsoe claimed in *Cannone* were for work performed in *DEC,* and he reserved the

right to seek a stay of the interpleader action if he determined that the *DEC* appeal "directly impacts Mr. Bledsoe's contract."

On appeal, Noey argues that Bledsoe breached his duty of candor in failing to apprise the trial court of the *DEC* matter then pending on appeal and that, because related matters were pending before the supreme court, the superior court lacked jurisdiction to hear the contract issue presented in the interpleader action.

These claims are based on wholly unsubstantiated allegations. At trial, Noey did not challenge the reasonableness of Bledsoe's fees or the quality of his work. Nor did he raise his theory that Bledsoe's billings in *Cannone* actually might be for work performed in *DEC.* Given Noey's trial theory, there were no material facts with respect to *DEC* for Bledsoe to disclose, and there is no record evidence of overlapping billings.

Moreover, even if all facts were as Noey alleged, the trial court would not have been deprived of jurisdiction to hear the contract dispute in this case. Alaska Appellate Rule 203 divests trial courts of jurisdiction over "proceedings on appeal ... in the appellate court[.]" Because this interpleader action was not the "proceeding on appeal" in *DEC,* the appeal in *DEC* could have had no effect on the superior court's jurisdiction to hear the interpleader trial, even if *DEC* conceivably might have impacted this case.

### F. The Court Was Not Required to Enter Written Findings.

Noey argues that Bledsoe violated Alaska Civil Rule 78 by failing to prepare and submit proposed findings of fact and conclusions of law "in writing" and that the trial court violated Civil Rule 52(a) by failing to enter written findings and conclusions. But Civil Rule 78 only specifies that successful parties must prepare and submit proposed findings and conclusions in writing "[u]nless otherwise ordered by the court." Here, the court ordered Bledsoe to submit a proposed judgment. And Civil Rule 52(a)

---

**41.** *See Andrews v. Alaska Operating Eng'rs—Employers Training Trust Fund,* 871 P.2d 1142, 1144 (Alaska 1994).

**42.** No. 3AN-84-8759.

does not require written findings.[43] It only specifies that, upon concluding an action, "the court shall find the facts specially and state separately its conclusions of law[.]" To satisfy this rule, findings need only be sufficiently detailed to permit review.[44] The trial court in this case made detailed oral findings of fact and conclusions of law. Because its findings are sufficient to permit appellate review, further written findings and conclusions were unnecessary.

### G. The Court Did Not Abuse Its Discretion in Denying Noey a New Trial.

 Noey claims that the superior court erred in denying his alternative motion for a new trial. The decision to grant or deny a new trial motion rests with the sound discretion of the trial judge and is reversible on appeal only "in the most exceptional circumstances and to prevent a miscarriage of justice."[45] In denying Noey a new trial, the court found that he raised no contentions that were not or could not have been raised at trial. On appeal, Noey merely argues that cumulative error required a new trial. Because we have concluded that the trial court committed no error, Noey's cumulative error argument fails. We conclude that the court did not abuse its discretion in denying Noey a new trial.

### IV. CONCLUSION

Finding no error, we AFFIRM the superior court's judgment.

MATTHEWS, Chief Justice, not participating.

---

**43.** See Urban Dev. Co. v. Dekreon, 526 P.2d 325, 328 (Alaska 1974); Moore v. Moore, 499 P.2d 300, 303 (Alaska 1972).

**44.** See Urban, 526 P.2d at 328; Moore, 499 P.2d at 303.

**45.** Dowling Supply & Equip., Inc. v. City of Anchorage, 490 P.2d 907, 909 (Alaska 1971) (quoting Ahlstrom v. Cummings, 388 P.2d 261, 262 (Alaska 1964)).